UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------x
EQ TRANSPORTATION, INC.,

                Plaintiff,

   -against-                                MEMORANDUM AND ORDER
                                                       04-CV-5711 (ILG)
TNT TRANSPORTATION, INC., STEVEN
M. JENSEN and THOMAS H.
SCHNEIDER, JR.,

                Defendants.
--------------------------------------------------x

GLASSER, United States District Judge:

## INTRODUCTION

Pending before the Court is the summary judgment motion of plaintiff EQ Transporation, Inc. ("plaintiff" or "EQ"). EQ asserts that defendant TNT Transportation, Inc. ("TNT") defaulted on the terms of a lease agreement between the parties, and that defendants Steven M. Jensen ("Jensen") and Thomas H. Schneider ("Schneider") defaulted on guaranties they signed in connection with that lease (collectively, TNT, Jensen and Schneider are referred to as "defendants"). In opposition, defendants concede that they breached the respective agreements, but argue that there is a fact issue as to the amount of damages EQ suffered. For the reasons set forth below, plaintiff's motion for summary judgment is granted in its entirety.

## BACKGROUND

EQ is a Delaware corporation with its principal place of business in Connecticut. (Plaintiff's Statement of Undisputed Facts Pursuant to Rule 56.1 of the Local Civil Rules

1

for the Eastern District of New York ("Pl. Rule 56.1 Statement") ¶ 1). EQ is the beneficial interest holder in Conseco Finance Leasing Trust f/k/a Green Tree. (Id. ¶ 10). TNT is a New York corporation with an office located in Staten Island, New York. (Id. ¶ 2). Jensen and Schneider are both residents of Staten Island, New York. (Id. ¶¶ 3, 4).

On or about February 13, 1998, TNT, as lessee, entered into a master vehicle lease agreement, as amended from time to time (collectively, the "Lease Agreement"), with Green Tree Leasing Trust ("Green Tree"), as lessor. (Pl. Rule 56.1 Statement ¶ 9). Pursuant to the Lease Agreement, TNT leased certain vehicles from Green Tree in return for an agreed upon payment schedule. (Id.). The Lease Agreement states that time is of the essence "with respect to all payments and other obligations of" TNT. (Affidavit of Ellen Miller sworn to February 1, 2005 ("Miller Aff.") Exh. A ¶ 3). An "event of default" as that term is defined in the Lease Agreement includes TNT's failure to make a timely lease payment. (Id. ¶ 13). Upon such an occurrence, EQ is entitled to, inter alia, liquidated damages computed at a rate specified in the Lease Agreement. (Id. ¶ 14). In addition, in the "event of default," TNT is required to pay all of EQ's costs and expenses incurred in enforcing the Lease Agreement, including attorneys' fees. (Id. ¶ 15). In its discretion, EQ may sell any or all of the vehicles which are returned or repossessed under the terms of the Lease Agreement. (Id. ¶ 14). The Lease Agreement is to be interpreted according to Minnesota law. (Id. ¶ 16).

In order to induce EQ to enter into the Lease Agreement, both Jensen and Schneider signed unconditional personal guaranties (collectively, the "guaranties") pursuant to which they agreed to pay without condition any money which TNT owed under the Lease Agreement. (Miller Aff. Exh. B). In addition, the guaranties state that,

2

if necessary, they would pay the costs of collection, including reasonable attorneys' fees and expenses, in the event that TNT failed to make timely payment under the Lease Agreement and an action needed to be commenced against them. (Id.). The guaranties are to be interpreted according to Minnesota law. (Id.).

On March 1, 2003, TNT defaulted under the terms of the Lease Agreement by, among other things, failing to make timely payments to EQ. (Pl. Rule 56.1 Statement ¶ 11). EQ put TNT on notice of its default, but TNT has at all times refused to make payment of the money due under the Lease Agreement. (Id. ¶ 12). Jensen and Schneider have also failed to make the required payments due to EQ under the Lease Agreement and guaranties. (Id. ¶ 26). As of December 3, 2004, EQ is owed no less than $1,027,965.57 from TNT, Jensen and Schneider, plus interest, attorneys' fees, late charges and other charges which continue to accrue. (Id. ¶ 27). EQ filed the complaint in this matter on December 30, 2004 seeking to collect the money defendants owe it. This motion followed.

### A. The Summary Judgment Standard and the Significance of Defendants' Failure to Submit a Counter-Statement of Disputed Material Facts

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A genuine issue as to a material fact exists when there is sufficient evidence favoring the nonmoving party such that a jury could return a verdict in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Therefore, the nonmoving

party "may not rest upon the mere allegations or denials" of its pleadings; rather, its response must go beyond the pleadings to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). However, when evaluating a motion for summary judgment, "[t]he courts must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." L.B. Foster Co. v. American Piles, Inc., 138 F.3d 81, 87 (2d Cir. 1998) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

Local Civil Rule 56.1 for the Eastern District of New York provides that "papers opposing ... summary judgment ... shall include a separate, short and concise statement of the material facts as to which it is contended there exists a genuine issue to be tried." Local Civil Rule 56.1(b). Here, plaintiff submitted a statement of material, undisputed facts. Defendants, however, failed to submit a counter statement of disputed material facts in opposition to plaintiff's motion for summary judgment. According to Local Civil Rule 56.1(c), "[e]ach numbered paragraph in the statement of material facts required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Accordingly, plaintiff's statement of undisputed facts must be and is "deemed to be admitted." Local Civil Rule 56.1(c); see also Dusanenko v. Maloney, 726 F.2d 82, 84 (2d Cir. 1984) (finding that facts set forth in movant's statement of undisputed facts were properly deemed admitted where the nonmovant failed to serve any opposing statement); Gallimore-Wright v. Long Island Railroad Co., 354 F. Supp. 2d 478, 483 (S.D.N.Y. 2005) (those

4

facts asserted by defendant, in its statement of material facts annexed to its motion for summary judgment, to which plaintiff completely failed to respond, or responded only by asserting that facts stated were not relevant, would be deemed admitted). Among other things that defendants admit, therefore, is that as of "December 3, 2004, there is due and owing and payable to EQ from TNT, Jensen and Schneider, no les[s] than the sum of $1,027,965.57, plus interest, attorneys' fees, late charges and other charges, all of which continue to accrue." (Pl. Rule 56.1 Statement ¶ 27).

In this regard, defendants cannot raise disputed issues of fact through "mere conclusory allegations or denials in legal memoranda" because they "are not evidence." Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation marks and citations omitted). Therefore, defendants' statement in their brief that material issues of fact preclude the grant of summary judgment to plaintiff for the damages it seeks is irrelevant to the Court's determination. Moreover, a touchstone for the admissibility of documents on a summary judgment motion is personal knowledge such that the "affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). Here, Marc Lederer, defendants' counsel, seeks to introduce evidence of the market value of the vehicles which TNT returned to EQ under the terms of the Lease Agreement, and which EQ subsequently sold. (See Affidavit of Marc Lederer sworn to March 2005 Exh. A.). This is not competent evidence because there is nothing in Mr. Lederer's affidavit which reflects that he has any personal knowledge of the information he seeks to introduce into evidence. See generally Commercial Data Servers, Inc. v. International Business Machines Corp., 262 F. Supp. 2d 50, 59 (S.D.N.Y. 2003). Accordingly, the Court is precluded from considering this portion of Mr. Lederer's affidavit. See, e.g., H. Sand &

Co., Inc. v. Airtemp Corp., 934 F.2d 450, 454-55 (2d Cir. 1991) (documents submitted in opposition to summary judgment motion must be presented by an affiant with personal knowledge and must be authenticated to be admissible).

**B.    Is There A Disputed Issue of Fact
       on The Amount of Plaintiff's Damages?**

Defendants concede in their opposition papers that they have failed to tender full payment to EQ of the amount due and owing under the terms of the Lease Agreement and guaranties, and therefore they are in breach of each of them. Their argument in opposition to plaintiff's summary judgment motion, based "upon [their] research of the fair market value of the vehicles" returned by TNT and resold by EQ after TNT breached the Lease Agreement (and guaranties), is that the "resale amounts" are "far below the fair market value of the vehicles," and therefore there is an issue of fact concerning the amount of plaintiff's damages. (Affidavit of Steven M. Jensen sworn to March 2, 2005). As discussed above, defendants' argument fails as a threshold matter because they have not introduced any admissible evidence to support their position. Moreover, defendants' assertions are conclusory and not predicated on any competent evidence.

Even if the Court were to consider Mr. Lederer's submission consisting of a comparison between the "fair market value" and "the actual sale [price]" by plaintiff of the leased vehicles returned by TNT upon its default, defendants still fail to raise a material issue of fact preventing the grant of summary judgment to plaintiff. In essence, defendants argue that because EQ did not obtain the best possible price for the vehicles,[1] the sale was not commercially reasonable. This argument finds no support in the law.

---

[1] EQ credited TNT with the amount it received from the sale of the returned vehicles, thus reducing the damages it seeks by that amount.

A secured party, as EQ here, seeking a deficiency judgment, must dispose of collateral in a commercially reasonable manner.[2] Karlstad State Bank v. Fritsche, 374 N.W.2d 177, 181 (Minn. App. 1985); Minn. Stat. § 336.9- 610(b) (the sale may be public or private, but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable). The statute further states that the secured party may sell the collateral "in its present condition." Id. § 336.9-610(a). Plaintiff has submitted undisputed evidence that the vehicles returned by TNT were in a "distressed and worn condition," as many if not all of the buses required new tires, batteries and extensive body repair, suffered other mechanical problems, and had missing equipment, including VCR's, microphones and fire extinguishers. (Ciralli Aff. ¶¶ 8, 9 & Exh. 2). Moreover, EQ took several steps to resell the vehicles at the highest price, including placing them in advertisements in at least one trade journal. (Id. ¶ 13). To the extent that the buses were sold below "market value," moreover, that resulted from a glut of them being sold at the same time that EQ sold the vehicles at issue in this case. (Id. ¶ 19). EQ, therefore, has made a prima facie showing that the sale of the vehicles was reasonable.

Against this background, summary judgment is appropriate because defendants have failed to come forward with specific evidence of commercial unreasonableness.

---

[2] In addition to price, for a sale to be commercially reasonable, the debtor must receive sufficient notification. Under Minn. Stat. § 336.9-611(b) & (c), notification is reasonable if it "was sent in sufficient time to enable those entitled to notice to take appropriate steps to protect their interest in the collateral." Chemlease Worldwide, Inc. v. Brace, Inc., 338 N.W.2d 428, 434 (Minn. 1983). Further, the notice of sale must be properly addressed. Id. "[T]he reasonableness of the notification generally depends upon the collateral involved and other circumstances peculiar to each case." Id. Here, defendants have not alleged improper notification, and the undisputed evidence indicates that they received adequate notification of the disposition of the vehicles. See Affidavit of Rick Ciralli sworn to March 31, 2005 ("Ciralli Aff.") ¶ 6 & Exh. 1.

See, e.g., Ford Motor Credit Co. v. Russell, 519 N.W.2d 460, 465 (Minn. App. 1994). Allegations that a better price could theoretically have been obtained through, among other things, a different method of sale, are insufficient to raise a factual issue as to commercial reasonableness.³ See Minn. Stat. § 336.9-627(a); see also Fedders Corp. v. Taylor, 473 F. Supp. 961, 973 (D. Minn. 1979). This is what defendants improvidently argue through their submissions which are supported only by data derived from Kelly's blue book. Accordingly, defendants have failed to raise a genuine issue of material fact on the issue of the amount of plaintiff's damages.

---

³As noted above, the parties agreed that Minnesota law would govern the interpretation of the Lease Agreement and guaranties. In their briefs, the parties do not discuss which state's law governs in this diversity action. The Court, however, will apply Minnesota law which the parties' briefs assumed. Krumme v. Westpoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such implied consent is sufficient to establish choice of law") (quotations and citation omitted). Moreover, regardless of whether Minnesota or New York law applies, the result would be the same. See, e.g., Chemical Bank v. Haseotes, 1994 WL 30476, at *4 (S.D.N.Y. Feb. 1, 1994) (holding that under New York law, failure to receive optimum price does not make sale commercially unreasonable).

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for summary judgment is granted in its entirety. Within twenty days of entry of this Memorandum and Order, plaintiff's counsel is directed to submit to Chambers a proposed judgment and all necessary documentation in support thereof, including but not limited to, an affirmation attaching itemized statements indicating the legal services that he rendered to his client, a condition precedent to obtaining attorneys' fees in this Circuit. See New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983).

SO ORDERED.

Dated: June 24, 2005
Brooklyn, New York

_____/s/_____
I. Leo Glasser
United States District Judge

Copies of the foregoing were sent on this day to:

Mitchell D. Cohen
Duane Morris LLP
380 Lexington Avenue
New York, New York 10168

Attorneys for Plaintiff

Marc Lederer
Corash & Hollender, P.C.
1200 South Avenue, Suite 201
Staten Island, New York 10314

Attorneys for Defendants